# 𝔖taunton

ADAM STACY V. COMMONWEALTH.

September 20, 1934.

Present, All the Justices.

The opinion states the case.

*W. Clyde Dennis,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Edwin H. Gibson, Assistant Attorney-General,* for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

Stacy was jointly indicted with Henry Collins for stealing clothes off of the clothes line of Amanda Charles. The clothes were alleged to be of the value of $75 and Stacy was found guilty of grand larceny and his punishment fixed at six years in the penitentiary. The trial court refused to disturb the verdict.

The Commonwealth introduced Amanda Charles as a witness and she testified that every article of clothing hanging on her clothes line, with the exception of a "bath towel and one or two other cheap garments" were stolen and "that the value of the clothing fixed by me at the time they were stolen is $63.75." There was no other testimony touching the value of the clothes.

Henry Collins, who was jointly indicted with Stacy, testified in behalf of the Commonwealth. He stated that he and Stacy "entered a plot together to steal the clothes of Amanda Charles." He confessed that he and Stacy stole the clothes and divided them "into three parcels" giving one to Stacy, one to a son of Collins who was participating in the crime and that he took one for himself.

The son of Collins testified to the same facts that were testified to by the father.

The court permitted one Bud Matney to testify as to the contents of an anonymous letter which had been sent to Jack Charles, the son of Amanda Charles. The letter had attached to it a drawing which indicated the point where the clothes were later found. The letter was signed by "The Shadow" and the information contained in it led to the recovery of the stolen property. Jack Charles, to whom the letter was sent, also testified as to the contents of the letter. Matney testified that the letter was written by the accused. Charles testified that in his opinion it was written by the accused. There was other information in the letter which reflected upon the character of the writer and disclosed a contemplated visit to a young woman for immoral purposes. This information was of such a nature that it was very prejudicial to the accused and unless he had been shown to be the writer of the letter, the testimony should not have been admitted. The letter was not introduced in evidence and the failure to introduce it has not been explained.

There were two errors assigned. The first was that "the evidence does not show that your petitioner committed any crime."

 We think that the evidence is sufficient to sustain the verdict.

The second assignment was directed to the action of the court in admitting the testimony regarding the contents of "The Shadow" letter.

 We are of the opinion that the assignment is well made. The "Shadow Letter" was never introduced in the evidence; it was never identified or authenticated in any manner whatever; it was not shown to have been written by the accused; and no one familiar with his handwriting testified that he wrote it. The failure to introduce the letter has not been explained and the immorality suggested in it was bound to have prejudiced the accused in the minds of the jury. It is true, the witness Matney testified that he "knew the letter written and signed by 'The Shadow' and testified about in the evidence in this case was written by

Adam Stacy." But just how he knew it is not shown. When we consider the fact that Matney was being accused of the theft of these same clothes because they had been found on his property, his statement that he "knew" that the accused wrote the letter, without some explanation of how he knew it, is entitled to little or no credit.

The judgment of the trial court is reversed, and the case is remanded for a new trial.

*Reversed.*